RECEIVED

SEP 15 2025

CLERK THOMAS G. BRUTON
U.S. DISTRICT COURT

N THE UNITED STATES DISTIRCT COURT

FOR THE NORTHERN DISTRICT OF ILLINOIS

EASTERN DIVISION

KIMBERLY SUTHERLAND,

Plaintiff,

v.

CHICAGO TRANSIT AUTHORITY,

REGIONAL TRANSIT AUTHORITY, and

CITY OF CHICAGO,

Defendants.

)

)

)

**1:25-cv-11197**
**Judge Andrea R. Wood**
**Magistrate  Laura K. McNally**
**RANDOM/ Cat 2**

NO.

## COMPLAINT

Kimberly Sutherland, plaintiff pro se, states:

### FEDERAL JURISDICTION

1. Federal jurisdiction is grounded on two federal statutes:

A. The Americans with Disabilities Act (ADA) 42 U.S.C. §2101, Titles II,  III. and
IV.

The ADA requires that all defendants-- the Chicago Transit Authority (CTA), the
Regional TransitAuthority (RTA), and the City of Chicago (City) – protect  disabled
people in the following activities:

1

(1)  receiving government services,

(2)  using public transportation, and

3)  using public accommodations (the Chicago Police Department (CPD) stations are places of public accommodation).

As part of the protection for the disabled, ADA officials have given the Regional Transit Authority (RTA) the responsibility for the ADA's paratransit program for disabled passengers in Chicago.

B.  42 U.S.C. Section 1983

(1)  The CTA and RTA, which act under color of law, must not deprive its passengers of the right to personal security, *Ingraham v. Wright*, 430 U.S. 651, 672-3 (1977) nor deprive them of their constitutional right to travel. The right to travel applies to both intrastate travel, *Lutz v. City of York, Pa.* 899 F.2d 255 (3rd Cir. 1990) and interstate, *Shapiro v. Thompson*, 394 U.S. 618 (1969).  In Chicago, public transit should be considered part of interstate travel, as well as intrastate, since it connects is passengers to trains and planes that go to other states.

(2)  The City, which acts under color of law, must not deprive a citizen of the First Amendment right to free speech, through its police department, by falsifying a citizen's report of crimes and preventing a non-member complainant to bring an official court reporter to its internal affairs' interview. *ACLU of Illinois v. Alvarez,* 679 F.3d 583 (7th Cir. 2012)

The City must not deprive *victims* of crime their right to due process of law.

2

The City, CTA, and RTA all receive federal funds to operate, and specifically to prevent crime, on the public transit system.

C. This Court has pendant jurisdiction over the count for violation of the Illinois Consumer Fraud Act against the CTA and RTA, and the count for common law fraud against all defendants.

## APPLICABLE MANDATES OF FEDERAL CONSENT DECREE

2. The following are mandates of the federal 2019 Consent Decree, which the United States oversees, in *State of Illinois v. City of Chicago*, 17-cv-6260.

[The page references below are to the actual Consent Decree, not pages in the search bar of the PDF version online, which is 6 pages off due to page numbers assigned to a table of contents.]

A. To enforce the ADA, the Consent Decree mandates:

> …the CPD will designate at least one member as an …[ADA] liason who will coordinate CPD's efforts to comply with the ADA…(p.21, par.70)

B. To reform the CPD's Bureau of Internal Affairs (BIA) , the Consent Decree mandates:

> …BIA will send…complainants…a unique tracking number…and …advise…how the complainant…may inquire about the status of the investigation. (pp. 127-128, par.446a.)

Preliminary investigations will take all reasonable steps to discover any and all objective verifiable evidence relevant to the complaint....including but not limited to all time-sensitive evidence, audio and video evidence...photographic evidence GPS records...All reasonable steps will be taken to preserve relevant evidence...(p. 131, par. 460)

In the course of...misconduct investigations...BIA, and the districts will:

a. Take all reasonable steps to promptly identify, collect and consider all relevant...evidence ...including... body-worn cameras... (p.133, par.464)....

d. Audio record non-CPD member interviews subject to the interviewee's consent...

...CPD has designated Accountability Sergeants whose responsibilities include ....investigating complaints made against CPD members, which are referred to the district by BIA. (p.144, par. 493)

## .THE PLAINTIFF

3. The plaintiff was a passenger on westbound #12 CTA bus no. 8642 on March 18, 2025 at about 1:30 p.m..

## THE DEFENDANTS and THEIR EMPLOYEES

4.   Defendant  Chicago Transit Authority ("CTA") is a government agency, created by the Metropolitan Transit Act, 70 ILCS-3605.

5.   The CTA's employee "8642 bus driver" was the driver of  westbound #12 CTA bus no. 8642 on March 18, 2025 at about 1:30 p.m..

6.   Defendant  Regional Transit Authority ("RTA") is a government agency, created by the Metropolitan Transit Act, 70 ILCS-3615, which manages the CTA, and operates the ADA paratransit program.

7.   Defendant City of Chicago ('the City") is a municipal corporation.

8.   The City's employees are:

A.  Sarah N. Kelly, is  a CPD patrol officer assigned to the First District.

B.  David S. Madia is a CPD sergeant, assigned to the First District,.

C.  Suzan Brown is a Bureau of Internal Affairs (BIA) investigator.

## SUMMARY

City Policy to "kill crime"

9.  This case presents an example of an apparent policy of the City of Chicago (the City), through its Police Department (CPD) to 'kill crime', in other words, to lower violent crime statistics by not reporting volent crime to begin with. The violent crime in this case occurred in the lst CPD District, which includes the downtown where tourists and shoppers bring revenue to the City, so the appearance of low violent crime in the 1st District is especially important.

10. The plaintiff ("the victim"), who is female, disabled and senior, was mugged and sexually assaulted on a CTA bus, after the bus driver abandoned the bus and stood on the sidewalk, leaving the victim to the wrath of passengers who were angry that the victim asked to sit in one of the seats marked a priority seat for disabled/senior passengers. One female passenger in a black studded jacket wrested the victim's cooler from her grasp, and threw it down the stairs of the bus; the victim followed. On the way down the steps of the bus, a tall man in a black trench coat followed the victim and grabbed her right breast.

Report of Crimes to 1st District Police

11. The next day, the victim report the victim reported the mugging and sexual assault in the 1st District police station, the district where the crime occurred.

A. Apparently to discourage her, the sergeant and officers (all in uniform) made the victim stand and wait for about 30 minutes, even though she was the only one in line. There were no chairs for the public.

B. When Officer Sarah N. Kelly eventually spoke to the victim, she pretended to takedown the victim's report of the facts of the mugging and sexual assault, both violent felonies. A few days later, the victim saw Kelly's report, and saw that Kelly

6

had falsified the facts, apparently to justify her downgrade of the mugging and sexual assault to "non-criminal".

C.  The report showed that Sargeant David S. Madia, signed "approved" on Kelly's false report, even though he never heard any of the facts from the victim.

D.  By making a false report of the facts, Kelly and Madia committed the felony obstruction of justice.

<u>Complaint to Internal Affairs</u>

12.  The victim complained to the CPD'S Bureau of Internal Affairs (BIA), CPD Log no. 2025-1421, against the police officers named in par. 11 for making her stand and wait for about 30 minutes, an ADA violation, and then making a false report, a violation of her due process rights and free speech under 42 U.S.C section 1983, a violation of her free speech rights under *ACLU of Illinois Alvarez,* 679 F.3d 583 (7th Cir. 2012)., and obstruction of justice under Illinois criminal law.

13.  The BIA misrepresented in its most recent email that it is continuing to investigate the victim's complaints, but in violation of the Federal Consent Decree (par.2 B quote above) and Illinios criminal law, BIA investigator, Suzan Brown, has become an accessory to the obstruction by making the following relevant, impartial, objective evidence, not available:

> a.  CTA bus camera footage, which she claims she obtained but has not produced
>
> b.  traffic cam footage
>
> c.  tapes of a 911 call made by the CTA bus driver (according to the CTA)
>
> d.  footage of the 1st District Police Station lobby
>
> e.  body camera video and audio recordings from Kelly, Madia, and the 1st district sergeant who may have been Madia, who made the victimwait, standing for about 30 minutes.

f.   The accused officers' response to the complaint, which BIA wrote was attached to one of its emails, yet no attachment existed. The BIA has ignored the victim's request to resend the attachment, or to allow the victim t o go to CPD HQ and pick up the missing attachment if BIA would  leave it with the front door security officers.

14. Instead of gathering all the best evidence listed above, and in violation of the Consent Decree, Brown  has insisted that the victim sign a written Consent to  an interview to be recorded only by Brown, which would be subjected to an on-off switch, splicing and dicing, and the like. She admitted that this  insistence on consent to a one-sided recording is BIA policy.

15.  Brown refuses to allow the victim to bring an official court reporter to any interview, in violation of the victim's rights to due process and free speech under 42 U.S.C section 1983, and *ACLU of Illinois v. Alvarez,* 679 F.3d 583 (7th Cir. 2012). The BIA has accused the victim of being uncooperative for insisting on an official court reporter, and appears to be planning to dismiss the complaint.

8

## APPLICABLE ILLINOIS STATUTES and CPD RULES
### proscribing filing a false police report

16.   720 ILCS 5/31-4   Sec. 31-4.   Obstructing Justice.

(a)   A person obstructs justice when, with the intent to prevent  the
apprehension  or obstruct the prosecution or defense of any person,  he or
she knowingly commits any of the following acts:

Destroys alters, or conceals physical evidence, plants false evidence, *furnishes false information*...(emphasis added)

(a)  Sentence....

Obstructing justice is a class 4 felony...

## ILLINOIS STATUTE ON POLICE BODY CAMERAS

17.  50 ILCS 706/ 10-5)  "officer -worn body cameras may provide impartial
evidence....to settle ....allegations  of officer misconduct....while improving
transparency and accountability....

Sec. 10-20 (3)  Cameras must be turned on at all times  when the officer is in
uniform....or engaged in any law enforcement-related encounter or activity that
occurs while the officer is on duty.

9

CHICAGO POLICE DEPARTMENT (CPD RULES OF CONDUCT and  SPECIAL ORDER

18.    "Prohibited acts include:

Rule  1:  Violation of any law....

Rule  2:  Any action or conduct which impedes the Department's effort to achieve its policy or goals or brings discredit upon the Department.

Rule  3:  Any failure to promote the Department's effort to implement its policy or accomplish its goals.

Rule  8:  Disrespect to or maltreatment of any person, while on or off duty.

Rule 14:  *Making a false report,* written or oral."   (emphasis added)


19.  CPD Special Order   S02-01-03

"....This directive...continues the  provisions of the of Rights of Crime Victims Act (725 ILCS 120/1)... interact with victims of crime with courtesy, dignity and respect..."

## ILLINOIS CRIMINAL STATUTES
proscribing mugging and assaulting a passenger on a CTA bus

20.  720 ILCS 5/18-1   Sec. 18-1.  Robbery...

(a) Robbery. A person commits robbery when he or she knowingly takes property from person or presence of another by the use of force ...

(c)  Sentence

Robbery is a class 2 felony, unless the victim is 60 years of age or older or is a person with a physical disability...in which case robbery is a class 1 felony.

21.  720 ILCS 5/12-3.05   Sec.  12.3.05. Aggravated battery....

(c) Offense based on location of conduct. A person commits aggravated battery when, in committing a battery ...he or she is or the person battered is on or about a public way, public property, a place of public accommodation....

(d) Offense based on status of victim. A person commits aggravated battery when, in committing a battery ...he or she knows the individual battered to be any of the following:...

       (7)  ...a transit passenger...

(h) Sentence. Unless otherwise provided, aggravated battery is a class 3 felony.

22.  720 ILCS 5/11-1.60  Sec. 11-1.60.  Aggravated criminal sexual abuse.

      (a) A person commits aggravated criminal sexual abuse if that person commits criminal sexual abuse and any of the following aggravating factors exist (i) during the commission of the offense...

    (3)  the victim is 60 years of age or older;...

    (4)  the victim is a person with a physical disability...

(g) Sentence... a violation of subsection (a) is a class 2 felony....

11

## FACTS

RTA's FAILURE TO PROVIDE ADA PARATRANSIT PASS

23. On January 2, 2025. the victim began the application process for the ADA's paratransit program for people with disabilities. The RTA is responsible for carrying out the ADA's paratransit program   After the final step of the application process, a personal interview of the victim on February 18, 2025, the RTA found her eligible for the program but to-date has failed to provide her with a card so she can use the program.

CTA'S and RTA'S DECEPTIVE ANNOUCEMENTS

24. At all times pertinent to this complaint, the CTA and RTA  induce riders to use their buses by representing that they provide priority seating to disabled/senior riders and announce that they will use their camera footage of any criminal activity to protect  riders and prosecute criminals. These deceptive representations are made in the course of trade or commerce, the CTA and RTA intend its passengers to rely on these representations, and the victim in this case relied on these representations and suffered damage. The CTA and RTA made these representations knowingly and with intent to deceive.  The CTA has frequently plays two announcements over the loud speakers inside of its buses, which in substance state the following:

 Announcement #1:  All CTA stations, buses and railcars are equipped with cameras recording all activities for your protection.  Anyone committing any crime against a CTA passenger or employees will be prosecuted to the fullest extent of the law, which may result in imprisonment for up to 10 years.

Announcement #2:  Passengers are directed to give up seats that are marked for disabled/ elderly when asked to do so.

25.  At all times pertinent to this complaint, the CTA has written signs on seats in the front of its buses, which in substance state the following:

> Priority seat for people who are disabled or seniors.  Stand Up!
> Please move when requested.

THE EVENTS OF MARCH 18, 2025 AND FOLLOWING

Tuesday, March 18, 2025

26.  On March 18, 2025, at approximately 1:35 p.m., the victim boarded CTA #12 Roosevelt Bus number 8642, headed west, near the northwest corner of Roosevelt Road and State Street, Chicago, Illinois.

27.  The 8642 bus driver observed that the victim struggled physically to climb the steps at the bus' entry and used a reduced fare bus pass.

28. Once on the bus, the victim observed that a women with pink hair, about 30 years old, took up three of the scarce seats marked for disabled/senior passengers. The woman sat in one of these three seats herself, and she had folded back two of the seats for a baby crriage.

29.  The CTA's own rules give priority to the disabled/senior, and no priority to baby carriages.  The victim needed only one seat, which could have been the seat occupied by the women herself.

30. The victim told the pink-haired women that the victim was disabled and she needed to sit down for the bus ride.

13

31.  The pink-haired women became hostile and abusive, and told the victim she should  get off the bus.  Other passengers joined in the verbal abuse of the victim, also telling her to get off the bus.  The driver, who should have directed the pink-haired women to relinquish the disabled/senior seat she occupied, said nothing and abandoned her bus.  The driver stood on the street making calls on her mobile phone, from where she could see the mugging of the victim that followed.  By abandoning her bus, the driver gave the passengers license to engage in the mugging.   One of the passengers, in a black, silver studded jacket. violently grabbed the handle of the victim's cooler and fought with her for control, and then threw the cooler down the bus's steps.  The victim was using the cooler as a self-supporting cane and to carry groceries.

32.  The victim followed the cooler off the bus.

33. On the way down the steps of the bus, a tall man in a black trench coat followed the victim off the bus and grabbed her right breast.

34.   On the street, another man twice opened the victim's cooler and searched it.

35.   The driver re-boarded the bus and took it out of service.  All of the passengers left the bus.

36.   Before 2:00 p.m. that day, two subsequent #12 or #18 buses arrived also headed west on Roosevelt Road, and let on bus #8642 ex-passengers, but slammed the door in the victim's face , who was the last one to try to get on due to her mobility issue.   The bus #8642 driver apparently told the drivers of those two subsequent buses to deny the victim entry on their buses.   The driver of the first of these two subsequent buses could be identified by the CTA by the route, time and

14

his distinctive appearance, he was around his late 20's, white, slender, and medium height.

37. Finally, a fourth #12 or #18 bus arrived that let the victim on.

Wednesday, March 19, 2025

38. The next day, March 19, 2025, the victim reported the mugging and assault on March 18ᵗ. She went to the First District police station at 18th Street and State Street, the district where the crimes occurred. Inside the station, a written sign directed the public to stand in line until called by an officer at the front desk. The victim was the only person waiting in line. The police at the front desk, including a sergeant, were on a raised platform, behind a plastic shield, separated by a space, so their name tags, if any, were not readable.

39. The police conducted themselves in a way that conveyed they did want to take reports of crime, by mistreating the victim as follows:

(a) The police made her stand, first, for about twenty minutes; when she complained to the sergeant, probably Madia, that she was disabled and could not stand much longer, he had her stand another ten minutes with the thin excuse the patrol officers were busy writing reports.

(b) when the victim asked for a place to sit down during the half hour they made her wait, a patrolmen in a long-sleeved sweater had pointed to nonexistent chairs;

15

(c)  Officer Kelly finally talked to the victim, she tried to dissuade the victim
from reporting the mugging by the following misrepresentations:

(1)  stating the police could not get the CTA camera footage from the bus,
which is false;

(2)  Stating the victim needed to have called 911 and stayed on the scene
until officers arrived, which is not only false but would have been
dangerous since others, like the man on the street who searched the
cooler, could, have caused further harm; further CTA employee, who
later took the victim's complaint, "Jennifer", stated that its driver did call
911; the police did not show up;

(3)  when the victim asked Kelly why she did not ask for the time of the
mugging and bus number, Kelly admitted she had already made up a
time of 12 noon; the victim then gave Kelly the correct time and the bus
number;

(4)  Kelly told the victim she was classifying the report as a property crime,
when in actuality forcefully wresting the cooler from her was a robbery,
and class 1 felony; grabbing her breast was an aggravated criminal
sexual battery and a class 2 felony.

(5)  Kelly's written report, which she turned into CPD HQ later, shows she
classified the mugging as non-criminal, and wrote a false short narrative
misstating that the victim had a verbal dispute with the bus driver and
that the bus driver threw the cooler down the bus' steps.  Sgt. Madia
approved the report and "non-criminal" classification, when he had not
heard any of the actual narrative from the victim.

16

Friday, March 21, 2015

40.   On March 21, 2025, the victim called the CTA complaint line at1-888-968-7282, and gave "Jennifer" the facts of the mugging.  Jennifer said that the 8642 bus driver had actually made a call to 911, and no police officers responded.  After hearing the complaint from the victim, Jennifer stated that she "would see what management wants to do with this".  It appears management has done nothing.

Tuesday, March 25, 2025

41.   On March **25**, 2025, the victim went to COPA (Civilian Office of Police Accountability) near Ashland and Chicago Avenue, and spoke to Investigator Darrell Johnson to complain that Officer Kelly said she was downsizing the robbery and sexual assault to a property crime.  The victim had not seen Officer Kelly's written report at that time.

42.   The normal process is for reporting officers to send their reports to CPD Headquarters at 35th and Michigan (CPD HQ). Therefore the victim did not know then that Officer Kelly's report showed she and Sgt, Madia downsized the robbery and sexual assaul to "non-criminal" and wrote a false, short narrative, misstating that the victim had a verbal dispute with the bus driver and misstating that the bus driver put the cooler down the bus' steps.   Sgt. Madia, who approved the "non-criminal" classification,  had not heard the actual narrative from the victim.

43.   In addition to Officer Kelly's false classification of the mugging, the victim also complained to COPA of the following:

       (a) that the dispatcher and any officers he or she dispatched in response to
            the CTA driver's call, did not show up;

(b)  that the 1st District police made her stand for about half an hour before they would take her report, when she was only one in line, with the thin excuse they were writing reports;

(c)  that a patrolmen pointed to nonexistent chairs, when the victim asked for a place to sit down.

44.  After listening to the facts, COPA Investigator Johnson determined that this case should be handled by the Bureau of Internal Affairs (BIA) at CPD HQ, not COPA. BIA handles the more serious cases. Later, COPA sent the victim an email confirming that BIA, not COPA, should handle this case.

45.  On the same day March 25,  2025 , the victim went to CPD HQ. She spoke to Officer Leo Jefferson at the front door. Officer Jefferson went to the BIA office, on the 5th floor, and came back with a written note telling her to go back to COPA. She asked Officer Jefferson to name who wrote the note;  he would not. After telling Officer Jefferson she would not tolerate the runaround, Officer Jefferson went back to BIA on the 5th floor,  then came back and told the victim that BIA Sgt. Hector Marino agreed to speak to her that day. Sgt. Marino told the victim that camera footage of the lobby of the 1st District  police station existed. He said the victim's complaints would be assigned a case number and investigator.

## CAUSES OF ACTION

### COUNT I

### ADA VIOLATIONS

46. Plaintiff realleges and incorporates paragrahs 1- 45 as paragraph 46 of this complaint.

47. All defendants, the CTA, the RTA, and the City have violated The Americans with Disabilities Act (ADA) 42 U.S.C. §2101, Titles II, III. and IV, protect disabled people in the following activities:

(1) receiving government services,

(2) using public transportation, and

3) using public accommodations (the Chicago Police Department (CPD) stations are places of public accommodation).

48. As part of the protection for the disabled, ADA officials have given the Regional Transit Authority (RTA) the responsibility for the ADA's paratransit program for disabled passengers in Chicago. The RTA has found the victim eligible but has failed to give her a card to use for the paratransit program.

### COUNT II

49. Plaintiff realleges and incorporates paragrahs 1-45 as paragraph 49 of this complaint.

50. In violation of 42 U.S.C. Section 1983, the CTA and RTA, which act under color of law, deprived the victim of the right to her right to personal security,

19

*Ingraham v. Wright*, 430 U.S. 651, 672-3 (1977) and her constitutional right to travel. The right to travel applies to both intrastate travel, *Lutz v. City of York, Pa.* 899 F.2d 255 (3rd Cir. 1990) and interstate, *Shapiro v. Thompson*, 394 U.S. 618 (1969). In Chicago, public transit should be considered part of interstate travel, as well as intrastate, since it connects is passengers to trains and planes that go to other states.

51. In violation of 42 U.S.C. Section 1983, the City, which acts under color of law, deprived the victim of her First Amendment right to free speech, through its police department, by falsifying her report of crimes and preventing her, a non-member complainant, from bring ing an official court reporter to its internal affairs' interview, in violation of *ACLU of Illinois v. Alvarez,* 679 F.3d 583 (7th Cir. 2012). The City deprived the victim of a victim's right to due process.

## COUNT III

### ILLINOIS CONSUMER FRAUD ACT    815 ILCS 505/1

52. Plaintiff realleges and incorporates paragrahs 1-45 as paragraph 52 of this complaint.

53. The Illinois Consumer Fraud Act allows a private right of action when a person makes a deceptive statement, intending another person to rely on that statement, in the course of trade or commerce, that results in actual damage to the person hearing that statement. For consumer fraud, the victim does not have to prove a defendant acted knowingly and with intent to deceive, as with common law fraud.

54. In the present case, the CTA and RTA, in the course of trade or commerce, misrepresented it would allow disabled/senior riders to have priority seating, and misrepresented that it was recording activity on its bus and investigate criminality, and intended its riders to rely on those misrepresentations. The victim relied on those misrepresentations, and has been damaged.

20

COUNT IV

COMMON LAW FRAUD

55. Plaintiff realleges and incorporates paragrahs 1- 45 as paragraph 54 of this complaint.

56. The elements of Fraud are:

A false representation, concealment or omission

Of a material fact  intent to deceive

For the purpose of inducing the other party to rely on such

On which the other party justifiably relies representation

Which resulted in damages or injury.

57. As to the CTA and RTA,  plaintiff realleges and incorporates paragraph 54 as paragraph 57 of this complaint, and adds that these defendants acted with knowledge and intent to deceive.

58. As to the City, as a matter of policy, its CPD employees misrepresent that they will make an accurate report of a victim's complaints of crimes, and will conduct an unbiased investigation into reports of officer misconduct. Those employees have acted with knowledge and intent to deceive. The present victim relied on those misrepresentations, and has been damaged.

.WHEREFORE, plaintiff prays:

A. That this Court find that the CTA, RTA and City violated the ADA

B. That this Court find that the CTA, RTA and City violated section 42 U.S.C. 1983

21

C. That this Court find that the CTA and RTA violated the Illinois Consumer Fraud Act;

D. That this Court find that the CTA, RTA and City committed common law fraud;

E. That this Court mandate that:

(1) both the City and CTA produce bus camera footage; that the City produce traffic cam footage, camera footage of the lobby of the 1st District Police Station where the plaintiff reported the crime, body camera footage from the 1st district officers and sergeant, and the tapes of any 911 calls, including a call, the CTA said was made by the CTA bus driver;

(2) mandate that the City offer crime victims and witnesses the right to submit their own written narratives of facts of an incident, and receive a date and time stamped copy of their written narrative;

D. Award plaintiff damages in excess of $50,000.00, punitive damages. attorneys' fees, if any, and costs;

E. For such other relief as this Court deems meet.

Plaintiff demands a jury.

/s/ Kimberly A. Sutherland
703 S. Dearborn Street
Chicago IL 60605
(312) 726-0045
KAS900@msn.com

22

## CERTIFICATE OF FILING and SERVICE

I certify that on September 15. 2025, I filed this complaint with the Clerk of the United States District Court, Northern District of Illinois, Eastern Division. I certify that on September 16, 2025, I mailed a copy of this Complaint, First Class mail, postage prepaid to:

Kent S. Ray, Law Department
Chicago Transit Authority
567 W. Lake Street
Chicago IL 60661

Allison S. Noback, General Counsel
Regional Transit Authority
175 W. Jackson Blvd.
Chicago IL 60604

Mary B. Richardson-Lowry, Corporation Counsel
City of Chicago
121 N. LaSalle Street #600
Chicago IL 60602

/s/ Kimberly A. Sutherland
703 S. Dearborn Street
Chicago IL 60605
(312) 726-0045

KAS900@msn.com

23